Allen, J.
 

 This record presents the question of the construction of Sections 13441-1 and 13441-2, General Code (113 Ohio Laws, 177), which read as follows:
 

 Section 13441-1: “If the attorney for a person accused of crime pending in the court of common pleas, whether before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane, or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. If three-fourths of such jury agree upon a verdict, such verdict may be returned as the verdict of the jury. If there be a jury trial and three-fourths of the jury do not agree, another jury may be impaneled to try such question.”
 

 Section 13441-2: “If the court or jury find upon the hearing provided for in the next preceding section, that the accused is sane, he shall be proceeded against as provided by law. If the court or jury find him to be not sane, he shall be forthwith com
 
 *134
 
 mitted by tbe court to an insane hospital within the jurisdiction of the court; provided, that if the court deem it advisable, it shall commit such person to the Lima State Hospital until he be restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law. ’ ’
 

 The question arises on the record in the following manner: Prior to the commencement of the trial, counsel for Evans filed a motion which suggested the present insanity of the accused, and in such motion the accused offered to submit himself for examination to determine his mental condition at that time. The trial judge refused to grant a continuance for the purpose of determining Evans’ present mental condition, but did appoint a physician specializing in mental diseases to examine and inquire into his mental condition.
 

 The case proceeded to trial. At the trial, in the opening statement of counsel, attorneys for the defense stated that the evidence would show that the accused “at this time,” that is, in August, the time when the homicide was committed, “was not of sound mind and at the time that this happened was insane. ’ ’ At the conclusion of the opening statement made on behalf of the defense, the prosecutor asked:
 

 “Mr. Leis: Do I understand the defendant is not sane now?
 

 “Mr. Barbour: Yes.
 

 “Mr. Leis. Sane at the time he committed the crime and not now.
 

 “Mr. Barbour: He was insane at the time he committed the crime and he is insane now. ’ ’
 

 “Mr. Barbour: We will further show, the testi
 
 *135
 
 mony, as I say, will show, I think, without any doubt, the man is not of sound mind.”
 

 After counsel for the state had rested his case, which was short and not involved, counsel for the accused requested the court to adjourn until the next morning in order that the alienist appointed by the court to examine the accused might complete his examination and be prepared to testify. This request was refused by the court.
 

 The court also sustained an objection to a question asked of Dr. William T. Lindsay, attending physician at the Hamilton county jail, as to whether or not he had had an opportunity to observe the accused and determine his mental condition.
 

 It is suggested that Section 13441-1, General Code, requires the representation of insanity, in order to compel the attention of the court, to be made before or after, and not during, the trial. This seems a strained construction of the statute. Analyzing the section, we find, first, that the attorney for a person accused of crime “pending in the court of common pleas” may suggest to the court that such person is not then sane. The phrase “pending in the court of common pleas” certainly contemplates that the representation of insanity may be made at the time that the trial is pending in the court of common pleas. It indicates that the Legislature desired to take care of the situation where a defendant is actually insane at the time of the trial. The words relied upon for the argument, that the court may disregard a representation of insanity made during the trial, are not “either before or after trial,” but “whether before or after trial. ’ ’ The use of the word “ whether ’ ’ emphasizes the intention of the Legislature to safe
 
 *136
 
 guard, rather than to curtail, the rights of an insane defendant. These words mean that, regardless of the time of suggestion, with reference to whether it is before or after the trial, an attorney may, by presenting the certificate of a reputable physician, compel an examination into the mental condition of the defendant. Also the fact that the phrase “before or after the trial” qualifies this initial phrase only is shown by the fact that a second provision is enacted, namely, that the grand jury may represent to the court that any such accused is not then sane. Any such representation by the grand jury would of course come before, and not after, the trial. Then follows the significant phrase, “or if it otherwise comes to the notice of the court that, such person is not then sane.” No limitation of time whatever is attached to this phrase, and in the opinion of the majority of the court no such limitation is intended, except that the case be “pending in the court of common pleas.” Certainly orderly procedure would hardly be enhanced by conducting a trial of a person actually insane. If such a trial has taken place without knowledge of the insanity, the inquiry may, under this section, be instituted after the trial; but, if insanity does exist, certainly the inquiry should if possible take place before completing the costly and intricate proceedings of a criminal trial' such as this, which was1 a capital case.
 

 It is argued that all of the defendant’s rights under this section would have been preserved had the attorneys acted differently. The record shows that in this case the attorneys were appointed by the court. But, regardless of that fact, we challenge the theory that the entire responsibility for the conduct
 
 *137
 
 of the trial of a person claiming in good faith to be insane, particularly in a capital case, can be confided to his lawyer alone. The law does unfortunately penalize, not only in civil cases but in criminal cases, sane men for the dereliction of their attorneys. To extend this penalization to persons charged with capital offenses, claiming in good faith to be insane, is an extent to which the law heretofore has not proceeded. It is unfair to the accused to bind him, in facts going to the very essence of the case, by the acts of his lawyer, when such accused claims to be insane.
 

 The fact that the attorneys were appointed by the court, on account of the fact that the defendant had not means to procure counsel of his own, is significant with reference to their ability to procure expert testimony upon the defense of insanity. It is true that expert testimony upon that point has been abused; but it is also true that, when the defendant is indigent, an examination by an alienist must as a practical matter be secured under the order of the court. The court did, upon November 4, appoint a physician to examine the accused. November 4 was occupied in qualification of the jury, opening statements of counsel, and a view of premises by the jury. It does not appear what was done upon November 5. Upon November 6 the state proceeded with its case, and upon conclusion of the state’s case, one of the attorneys for the accused requested the court to adjourn until the following morning in order that the alienist appointed by the court to examine the accused might complete his examination and be prepared to testify, inasmuch as the only witnesses for the defense would be Dr. Wolf stein, the alienist, and the defendant himself. This request was
 
 *138
 
 refused by the court, and proper exception taken. Hence the court himself made it impossible for the attorneys for the accused to secure the certificate necessary under the first clause of the section by refusing to extend the time of examination. The defendant was compelled to be continuously in court, for all periods of the trial, and the record does not show anywhere that the alienist had, at the time the application for continuance was made, completed his examination, nor does it show that he at any time completed his examination. It is a well-known fact that an alienist cannot properly examine a case within the space of a few hours. The ordinary time for such examination in reputable insane asylums is three days. Having therefore made it impossible for the attorneys to present the certificate of the only physician whose services they could command for an indigent person, the court then failed to consider that the matter had come to his attention under the statute.
 

 We do not deem it necessary under this record to consider the refusal of the court under Section 13140-2, G-eneral Code (113 Ohio Laws, 175), to permit testimony to be offered as to the insanity of the accused at the time of the commission of the offense, nor to go into the question of the grave doubt as to the constitutionality of the provision establishing a conclusive presumption of sanity from the failure of the attorney to file a written plea of not guilty by reason of insanity. Two of the members of this court, including the writer of this opinion, are convinced that an enactment which would deprive an insane person of a defense going to the very vitals of his case, because of non-action upon the part of
 
 *139
 
 Ms attorney, would necessarily be unconstitutional, upon the ground that it would deprive such insane person of due process of law. We simply consider the question whether the court committed reversible error in refusing to investigate the mental condition of the accused at the time of the trial. The court apparently considered that, because the attorneys in the case had not presented the certificate of a reputable physician to the effect that the accused was not then sane, the court could ignore the frequent and continued representations of the accused’s counsel as to the mental condition of the accused at the time of trial. We do not so read the statute. It is true that it might be more clearly phrased. It is also true that the first clause, which provides for suggestion by the attorney that the accused is insane, calls for the certificate of a reputable physician. However, the statute then proceeds to declare that, “if it otherwise comes to the notice of the court that such person is not then sane the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose.” Certainly it came “to the notice of the court” that it was claimed that the accused was “not then sane.”
 

 It appeared to be the theory of the court that without an examination he could decide whether or not a notice given him that the accused was not then sane was true. We look upon the duty resting upon the court under the circumstances of this record as being mandatory. We think that there cannot rightly be, either under the statute or under the inherent power and duty of the court, a criminal trial of a person not sane at the time of the trial.
 

 Furthermore, we think that there cannot be a de
 
 *140
 
 cisión by the court that the person stated to be then insane is then sane without an investigation into the question of the sanity of the accused. The statute gives the court an option as to how it shall proceed under the circumstances. The court may itself proceed to examine into the question of the sanity or insanity of such person, or may impanel a jury for such purpose. The investigation must be conducted in one or the other of the methods indicated, and must be conducted whenever in good faith it is stated to the court that the defendant at the time of the trial is not then sane: In other words, under the circumstances of this record, the court is compelled to investigate the question of the sanity of the accused, and hence the accused is assured of an inquiry into his mental condition, not at the discretion of the court, but as a matter of right. This the trial court never gave.
 

 The case of
 
 People
 
 v. Hickman, 204 Cal., 470, 268 P., 909, 270 P., 1117, has no bearing upon this controversy. In that case a judicial determination of the sanity of Hickman was made. Here the accused has never had a judicial inquiry into his mental condition. He is entitled to such an investigation as a matter of right.
 

 Entertaining these views, the judgment of the Court of Appeals will be reversed and the cause remanded for further proceedings according to law.
 

 Judgment reversed and cause remanded.
 

 Kinkade, Robinson, Jones and Matthias, JJ., concur.
 

 Marshall, C. J., and Day, J., dissent.