THE STATE OF OHIO, APPELLEE, v. JEMISON, APPELLANT.

[Cite as State v. Jemison, 9 Ohio App. 2d 227.]

(No. 8388—Decided February 21, 1967.)

*Mr. C. Howard Johnson,* prosecuting attorney, and *Mr. Fred L. Newsom, Jr.,* for appellee.

*Mr. Jerry Weiner* and *Mr. Bernard Cohen,* for appellant.

DUFFEY J. This is an appeal from a judgment of the Common Pleas Court of Franklin County finding the defendant, appellant herein, guilty on two counts of murder in the first degree without recommendation of mercy. The death penalty is mandatory.

The first assignment of error concerns the failure of the court to conduct an inquiry into the appellant's present sanity, i. e., capacity to stand trial. Section 2945.37, Revised Code, as pertinent here, provides:

"If the attorney for a person accused of crime whose cause is pending in the Court of Common Pleas, before or after trial suggests to the court that such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. * * *"

Appellant was arraigned and entered his pleas on July 16, 1965. On the same day the court by entry committed him to Lima State Hospital for observation. The entry recites that "it was suggested to the court that the defendant is not now sane," and states that the commitment was made pursuant to the provisions of Section 2945.37, Revised Code. There is nothing of record to indicate either the basis or the source of the suggestion.

In a letter dated August 20, 1965, and filed September 7, 1965, the hospital superintendent stated that appellant had been examined and "in our opinion he understands the nature of the charges to be brought against him and can counsel in his own defense." No hearing was held nor was any other action taken.

Over five months later, on February 18, 1966, appellant's counsel filed a motion for inquiry pursuant to the statute. A certificate of a physician was filed February 21, 1966. The certificate was signed by a psychiatrist who stated that he had examined appellant and that appellant was presently suffering from a deep, chronic psychosis. The doctor further certified that appellant could not "comprehend the ways in which our society operates" and that "his approach to life is consistently mistaken, meaningless, and totally unsuccessful."

On March 7, 1966, the court signed an entry reciting that "defendant hereby withdraws his request for a sanity hearing." The entry was signed by both appellant and his counsel.

At no time before trial did the court "proceed to examine into the question of the sanity or insanity of said person," nor did the court "impanel a jury for such purpose."

We find the first assignment well taken. The court erred in failing to proceed in accordance with the provisions of Section 2945.37, Revised Code. That statute makes an inquiry mandatory whenever the court is confronted with a statement of defense counsel and a certificate of a reputable physician. See *Evans v. State* (1930), 123 Ohio St. 132, and *State v. Smith* (1931), 123 Ohio St. 237. With respect to the constitutional obligation of a court to determine the capacity of an accused to stand trial, see *Pate, Warden, v. Robinson* (1966), 383 U. S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.

The statutory prerequisites having been met in this case, the trial court was required to proceed under the statute. The fact that the court had previously received a contrary statement from Lima merely illustrates the need for an inquiry and determination.

Appellee contends that the request was withdrawn. The statute does not talk in terms of motions or requests, but rather of notice. A determination of present sanity or capacity of the accused to stand trial is not a matter within the discretion of either the counsel or the court. A duty to hold an inquiry arises when reasonable grounds to believe have been brought to the attention of the court. There is no way for someone to withdraw information from the attention of the court once it has been conveyed. Further, if a man lacks capacity to stand trial, he also lacks capacity to "withdraw" a motion, or waive a jury trial, or otherwise act in the conduct of the case. *State v. Smith* (1931), 123 Ohio St. 237, at 244.

Appellee also contends that the issue of present insanity was determined at the conclusion of the trial upon the basis of the evidence produced during the trial. The Supreme Court decisions make it apparent that the inquiry pursuant to the statute is mandatory and not discretionary. However, appellee also contends that even though it was error not to proceed with the inquiry there was no prejudice in doing so. Appellee's contention presupposes that the jury waiver was effective. It also ignores the right of the Legislature to require a particular pro-

cedure. In our opinion, the trial court cannot ignore the statutory requirements and substitute its own approach to the problem for that prescribed by the Legislature.

The second assignment of error relates to the overruling of a pre-trial motion to suppress, and to the admission of evidence obtained as a result of an alleged unreasonable search and seizure.

Appellant shot and killed John Lyman about 1 p. m. on May 10, 1965. Within an hour, he was identified as the assailant. His residence was then "staked out" by police. The surveillance of the home continued for some 20 hours. There was nothing to indicate that anyone was present, and the neighbors thought no one was home. At approximately 9 a. m. on May 11, 1965, the police entered the house. No search warrant had been requested or issued. A police officer testified that the police had been unable to locate appellant's wife, Virginia, and that "it then became an opinion of mine that there was probable cause to believe a felony had been committed in this residence." After entry, the premises were searched and the body of Virginia Jemison was discovered upstairs, the victim of a homicide by gunshot.

A search without a warrant is illegal unless incident to valid arrest, or under circumstances amounting to exigency. There was no arrest involved, and there obviously was no emergency which would excuse the lack of a warrant. Compare *Morrison* v. *United States* (1958), 262 F. 2d 449, and *People* v. *Albea* (1954), 2 Ill. 2d 317, 118 N. E. 2d 277.

The trial court erred in not sustaining the motion to suppress. All evidence obtained as a result of the illegal search, including testimony which is the "fruit" of that illegal entry, must be excluded.

The judgment of the Common Pleas Court will be reversed and the cause remanded for new trial.

*Judgment reversed*

Duffy, J., concurs

Troop, J., concurring. I concur in the judgment for the reasons set forth herein.

The entry, filed July 16, 1965, committing the defendant in the trial court to Lima State Hospital contains two significant phrases, as follows: (1) "it was suggested to the court that the defendant is not now sane," and (2) "pursuant to the provisions of Section 2945.37 of the Revised Code of Ohio."

Section 2945.37, Revised Code, does not authorize the sending of an accused to Lima. Only Section 2945.40, Revised Code, contains such authorization when insanity is set up as a defense. Whether by design or mistake, the order of the court refers to Section 2945.37, Revised Code, and does not recite as the reason for the order that the defendant relies upon insanity as a defense.

Two cases deal with the authority of a court under Section 2945.40, Revised Code. *In re Henry* (1954), 97 Ohio App. 64, decided by the Franklin County Court of Appeals, and *In re Fisher* (1958), 167 Ohio St. 296, decided by the Supreme Court. Both were actions in habeas corpus. In both the defendants pleaded not guilty by reason of insanity. In *Fisher*, the court denied relief, holding simply that the court had authority in such a case to send the accused to a local hospital or to Lima. Comment as to what happens thereafter, or as to the significance of what the court "may" do under the elaborate provisions contained in Section 2945.40, Revised Code, is entirely lacking. In *Henry*, the Court of Appeals suggests that the sole and limited purpose of the commitment is to ascertain whether the accused should be placed on trial, nothing being said as to a determination of sanity at the time of the act charged against the accused.

The trial court elected to proceed under Section 2945.37, Revised Code, it being suggested to the court that the defendant is not now sane. That suggestion may have come from the defense offered, or it "otherwise" came to the notice of the court. In either case, Section 2945.37, Revised Code, requires that the court itself, or by impaneling a jury, "shall proceed to examine into the question of the sanity or insanity of said person."

Two cases provide the rules, *Evans* v. *State* (1930), 123 Ohio St. 132, and *State* v. *Smith* (1931), 123 Ohio St. 237. Both cases appear to establish the law in Ohio. *Evans* flatly says

that upon notice the trial court shall "forthwith" examine into the question of sanity or insanity. The term "forthwith" suggests that the inquiry must begin without delay, which means that if notice comes before trial, the inquiry must come before trial.

The *Smith case* approves and follows *Evans,* but it also points out a most significant turn to the fundamental rule. The trial court in *Smith* denied the right of the accused to waive a jury and be tried by the court because of the suggestion of possible insanity. The Supreme Court held that the rule in *Evans* should have been followed and the question of sanity determined. Then a most pointed sentence appears, as follows:

"Having been found sane, he can exercise his waiver of a jury and elect to be tried by the court."

The defense, in *Smith,* had urged that they would show by qualified men that the defendant had the mental capacity of an eight and one-half year old child, which was the likely basis for the refusal of the trial court to permit a waiver of trial by jury. Our case differs in that the waiver of a jury trial was accepted by the court. In both cases, however, it can be said that the court had some notice that the defendant might not presently be sane. Notice having come to the court, the rule in *Smith* should apply in the instant case, and then, "having been found sane," the defendant can exercise his waiver of a jury.

Under Section 2945.37, Revised Code, the trial court was required to inquire "forthwith" into the sanity or insanity of the defendant as set forth in *Evans, supra.*

The modern terminology contained in the "certificate" filed with the court February 21, 1966, may not conform to the traditional language as required by the McNaghten test as set out in paragraph fifteen of the syllabus of *State* v. *Frohner* (1948), 150 Ohio St. 53 (approved in *Krauter* v. *Maxwell, Warden* (1965), 3 Ohio St. 2d 142, at page 144), but however far from the customary, it should not be discarded completely. It strongly suggests a mental disturbance present in the defendant sufficient to justify and require the following of the procedure set out in Section 2945.37, Revised Code. Not to have done so was error, and the judgment should be reversed and the cause remanded for further proceedings according to law.