The State of Ohio, Appellee, *v.* Boham, Appellant.

[Cite as State v. Boham (1971), 29 Ohio App. 2d 142.] ·

(No. 71-138—Decided September 21, 1971.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. David H. Bodiker,* for appellee.

*Mr. Roy F. Martin,* for appellant.

Troop, P. J. This appeal is from a verdict, and the judgment entered pursuant thereto, finding the defendant, William Boham, guilty on the first two counts of a three count indictment. The third count was dismissed by the trial court. The guilty verdict on two counts of murder in the first degree while perpetrating a robbery carried a recommendation of mercy. The judgment, from which this appeal was taken on questions of law, was entered March 23, 1971.

Four assignments of error are offered in support of the appeal, as follows:

"The trial court erred in failing to grant defendant-appellant's motion to dismiss for failure to bring him to

trial within two terms after the term at which his indictment was presented.

"The trial court erred in removing for cause jurors who expressed conscientious scruples about the death penalty.

"The trial court erred in refusing to give defendant-appellant's instruction on the status of the defendant if found not guilty by reason of insanity.

"The judgment of the trial court on the issue of insanity is against the manifest weight of the evidence and is contrary to law."

Such facts as are necessary to an understanding of the error assigned will be noted in the discussion of the error.

Assignment of error No. 1 is predicated upon the provisions in R. C. 2945.71, the pertinent part of which reads as follows:

"No person shall be detained in jail without a trial for a continuous period of more than two terms after his arrest and commitment on an indictment * * *. He shall be discharged unless a continuance is had on his motion or the delay is caused by his act."

Counsel for the defendant, appellant herein, cites and relies upon several cases in support of this assignment of error, two of which are noted at the outset. The first decision, in *State* v. *Gray* (1964), 1 Ohio St. 2d 21, holds that R. C. 2945.71, etc., are valid legislative enactments and their provisions mandatory. A second decision, in *State* v. *Cross* (1971), 26 Ohio St. 2d 270, approved and followed *Gray,* and added that the mandatory duty imposed by the law was not affected by the failure of the accused to demand a trial before the end of the term.

*Gray* presents a rather simple fact pattern. Mere calculation of time is all that is necessary to produce the result reached by the court. Arithmetic is simple in the *Cross* case, also, uncomplicated by other facts which a reviewing court is obliged to consider. The decision in *Cross* is in no sense sweeping and unlimited. On the contrary,

Justice Herbert is careful to recognize complicating factors that upset easy counting on the fingers. For instance, at page 274, this is the language he used:

"However, the question of whether an accused caused the delay mentioned in that section [R. C. 2945.71] is one of fact for determination by the trial court and, in the case at bar, that court has absolved the appellee of any responsibility for the delays which ensued below. An examination of the record discloses sufficient evidence to support the trial court's conclusion in that regard."

At page 275, Justice Herbert continues:

"It is not our purpose here to depart from the accepted premise that ordinarily the constitutionally announced right to a speedy trial is not denied unless a demand for trial has remained unsatisfied for an unreasonable period. * * *""

The decision then notes a number of previous decisions of the court on the same problem (page 276), among which is *State* v. *Meeker* (1971), 26 Ohio St. 2d 9, in which the emphasis is upon "unjustifiable delays." As to the other decisions, the court observed that they were "limited * * * to their own facts," and that "each of such cases is factually distinguishable from the instant case."

This review brings us to a consideration of the facts in this case. Boham was indicted March 20, 1967. The sheriff served him with notice of the indictment on the same day. Two attorneys were appointed for him. Several preliminary motions were filed by counsel, including a plea in abatement. The supporting memorandum said that there "is a serious question as to the sanity of the defendant." As a consequence, the accused was sent to Lima State Hospital under an order entered June 6, 1967.

A report from Lima under date of July 6, 1967, was filed with the court July 10, 1967. The report said that Boham was "considered insane." He remained in Lima continuously until Lima found him "restored to reason" and able to stand trial. Such report to the court, dated January 27, 1970, was filed January 30, 1970. Counsel for

the defendant were notified of the report under date of February 24, 1970.

Counsel starts the calculation of the time the accused remained in jail without trial from the date of January 30, 1970. The period of unreasonable delay accomplishing the claimed statutory violation ended March 31, 1971. No question is raised about any procedural step or statutory device employed in the period prior to January 30, 1970.

Several significant facts need to be noted that occurred in the period defendant was in jail, from January 30, 1970, to March 15, 1971, one among them being the refiling, on February 4, 1971, of the report of Gordon L. Gudakunst, M. D., Staff Psychiatrist at Columbus Area Community Mental Health Center, dated December 21, 1970, in which, in summary, the psychiatrist said there existed a reasonable doubt as to Boham's ability to "participate in his own defense." Who secured the refiling, or why it was filed, is not apparent from the record, except that it was filed on the same day that newly appointed counsel filed a plea of not guilty by reason of insanity. The refiling also suggests that defendant was considered incompetent to stand trial on December 21, 1970, and continued to be so until February 4, 1971, at least by one doctor. If such be so, a trial court is obliged to settle the question of present insanity under R. C. 2945.37.

One of the two originally appointed counsel withdrew from the case March 30, 1970, and a substitute was appointed July 1, 1970. On September 30, 1970, counsel filed a motion requesting the use of three psychiatrists to determine the competency of Boham at the time of the act and at the time of trial. The motion was allowed and October 10, 1970, set as the limit of time in which to make nominations for examiners.

Dr. Gudakunst was requested by the defense, which may possibly account for the refiling of his report, no later examination appearing of record, and Dr. Halas by the state. They were named October 15, and 16, 1970.

A further suggestion of the insanity of the man is

supplied by a letter from the chaplain of the Juvenile Diagnostic Center dated November 9, 1970, saying that the defendant was "seeing visions" and "talking with God," and implying a disturbed state of mind.

Not until December 3, 1970, did the trial court receive a report from Dr. Evan J. Halas, a medical doctor attached to the Columbus Neuro-Psychiatric Clinic in which Boham was found to be a psychopathic personality. The doctor also concluded that he knew the difference between right and wrong, "is not insane" and is "capable of standing trial." At this point it seems that the trial court resolved the issue of present competency. At least, on January 29, 1971, the defendant was arraigned, the indictment read to him, and a plea of not guilty entered.

Again one of appointed counsel withdrew and a successor was appointed who, with the remaining counsel, filed a plea on behalf of their client, in addition to the previous not guilty plea, of not guilty by reason of insanity. The trial court was again confronted by the issue of insanity and another psychiatrist entered the picture by way of deposition and report. Dr. John H. Vermeulen issued a report February 5, 1971, which was filed February 11, 1971, finding the defendant "competent to stand trial." Copies of the reports of Drs. Vermeulen, Gudakunst, and Halas were served on the assignment commissioner and attorneys DePascale and Martin February 11, 1971, and on February 16, 1971, the case was set for trial on March 15, 1971. Before trial, March 4, 1971, counsel for the defendant filed a motion asking for dismissal by virtue of R. C. 2945.71.

The starting date for the period concerned in defendant's first assignment of error is, under R. C. 2945.71, "commitment on an indictment." There is no other clearly defined starting point within reach. Counsel for defendant suggests that in this case it is January 27, 1970, when Lima advised that Boham was "restored to reason." The strong implication to be drawn from that choice of the starting point is that so long as a defendant is so insane as to be incompetent to stand trial, the time period cannot

begin. Logically then, anytime that it appears that the question of competence again arises, trial must be postponed.

It is suggested by the foregoing recital of events, filings, and conduct of counsel, that everyone involved in the handling of Boham was at the least "in doubt" as to Boham's capacity to stand trial. No appointed counsel pressed for trial for the very obvious reason that the defendant was in no condition to stand trial.

The first service of the indictment on Boham, made by the sheriff March 20, 1967, is clearly of no effect, since it was nullified by a finding of insanity. An indictment never served could never be effective as an indictment, and the time provided in R. C. 2945.71 could never start to run. Some other method would have to be employed to extricate such an unfortunate. Service on an accused makes an indictment effective.

It is suggested that if there be a time necessary to calculate "speedy trial" time, it is, in this case, January 29, 1971, at which time the defendant was arraigned after having been found capable of standing trial. The cloud of incompetence remained over him, however, the entire time after his return from Lima until February 11, 1971, at which time Dr. Vermeulen concurred with the former finding of Dr. Halas that the defendant was competent to stand trial.

The course followed by the trial court was required by R. C. 2945.37, which says:

"If the attorney for a person accused of crime whose cause is pending in the court of common pleas, before or after trial suggests to the court that such person is not then sane, * * * or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person * * *."

Under the section the duty to act can arise "any time."

This Court of Appeals, then the Second District, in paragraph four of the syllabus of *State, ex rel. Moore,* v.

*Alvis, Warden* (1953), 94 Ohio App. 464, held, as follows:
"4. Section 13441-1, General Code [R. C. 2945.37], which provides for inquiry into the sanity of one accused of a crime, the prosecution for which is pending in the Common Pleas Court, applies where the present sanity of the accused is under investigation."

More recently, in *State* v. *Page* (1967), 11 Ohio Misc. 31, a case cited by defendant, paragraph one of the syllabus states that that part of the rule in R. C. 2945.37 which states "if it otherwise" comes to the attention of a trial court that the defendant is insane, "applies whenever in good faith it is stated to the court that such is the case."

Counsel for defendant cites, and relies upon, *State* v. *Jemison* (1968), 14 Ohio St. 2d 47, as support for the proposition that the trial court delayed unnecessarily. It arises from a pronouncement in paragraph one of the syllabus, as follows:

"* * * a subsequent suggestion of insanity under Section 2945.37 of the Revised Code, which does not inform the court that defendant has become insane since the prior determination of sanity was made, does not require the court to make a second examination into the question of sanity of such defendant."

The language is, however, it "does not require" the court to make a second examination, which is a long way from saying that it "may not" or "must not." The court even recognizes that there could be a change of mental condition after unreasonable delay. At page 51, the court says, "* * * it is possible that an accused could become insane subsequent to the original determination but before the trial."

It must be noted, also, that the court in *Page, supra,* cites and relies upon two earlier Supreme Court decisions: *Evans* v. *State* (1930), 123 Ohio St. 132, and *State* v. *Smith* (1931), 123 Ohio St. 237. The Supreme Court in *Jemison* distinguished *Evans* and *Smith*. *Smith* follows and quotes from *Evans*. Two propositions, in *Evans,* at page 139 and at 140, are noteworthy, as follows:

"We think that there cannot rightly be, either under the statute or under the inherent power and duty of the court, a criminal trial of a person not sane at the time of trial."

"The investigation must be conducted in one or the other of the methods indicated, and must be conducted whenever in good faith it is stated to the court that the defendant at the time of the trial is not then sane. * * *""

These authorities suggest that as long as the question of competence, present particularly, stands unresolved, trial is impossible.

Persistent deference to a man who indicated that he was not competent to stand trial, and who was found to be so, does not produce "unjustified delay." The delay cannot be said to be caused by his conscious act, but the condition of incompetence cannot be ascribed to another. It must, therefore, be held to be "caused by his act." Under the facts in this case, it cannot be said that the defendant was denied a "speedy" trial and we so hold. The trial court did not err in overruling defendant's motion to dismiss.

Defendant's second assignment of error concerns the trial court's removal for cause of jurors who expressed conscientious objection to the death penalty. The decision in *Witherspoon* is the bulwark of the support offered for this assignment of error.

In our case, the jury found the defendant guilty and, also, made a recommendation for mercy, which removed the possible imposition of the death penalty and instead required a life sentence. Attention is directed to the United States Supreme Court decision in *Bumper* v. *North Carolina* (1968), 391 U. S. 543, 88 S. Ct. 1788. In *Bumper,* the court said, at page 545, as follows:

"Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment."

The net result of this jury's recommendation of mercy is the imposition of a life sentence, and the rule in *Witherspoon* does not apply.

Defendant makes a point of what appears to be a modification of the rule in *Bumper*. The language used in paragraph 2 of the syllabus is: "* * * where [a] jury made such recommendation and [it] was not shown to be necessarily 'prosecution prone.' " Nothing in the record encourages the conclusion that this jury was "prosecution prone." Defendant seeks to make his point of a "prosecution prone" jury by reliance upon "recent studies." The proposition advanced is that these studies show that a "death qualified" jury is more likely to return a verdict of guilty.

It is submitted by this court that a reviewing court may not take judicial notice of a "study." Studies are conducted by people and involve people and methods. The results of a study are only as good as the skill and technique of the one who makes the study. Conclusions are valid or invalid depending upon who conducted the study and how it was conducted. The authors of the studies upon which defendant relies have never been examined, or cross-examined. The studies are of no significance in deciding whether or not this particular jury was "prosecution prone." Such a study cannot be the subject of judicial notice.

Until such a study is properly before the court as evidence, and has been subjected to the same tests and scrutiny required of all other evidence, it is a travesty of justice to utilize such a study as establishing any fact.

There is no reason not to apply the rule from *Bumper* in the instant case.

In his third assignment of error, defendant urges that a request for a special instruction was refused by the trial court and that such refusal was error. Defendant sought to instruct the jury as to the status of an accused found not guilty by reason of insanity, and the instruction embodied the procedural essentials set out in R. C. 2945.39, and included a statement that the defendant would not be deprived of his constitutional privilege of a writ of habeas corpus during confinement. The instruction was rath-

er complete as presented. In oral argument before the trial court, and in brief and oral argument here, counsel for the defendant urged that such an instruction was not a violation of the rule that a jury may not hear about punishment for an offense because the disposition of one found not guilty by reason of insanity was not punishment.

There is no decision law in Ohio squarely in point, but this court was confronted with the basic issue in this case, and passed upon it, in an unreported decision in *State* v. *Barnes,* No. 9754, issued August 4, 1970. The issue was not presented by way of request for a special instruction but arose as a result of questions sent to the court by the jury during deliberations. They inquired as to what disposition would be made of the accused if found guilty "due to insanity," or, if found not guilty "due to insanity."

The decision in *Barnes* points out the rigidity of the rule in R. C. 2945.11, and notes that by reason of R. C. 2901.01 the jury must consider punishment. Two cases are cited covering situations in which a jury was provided with information about the possible parole, or pardon, of a convicted defendant when the jury recommended mercy. This is a first-degree murder case, but the requested instruction respects a disposition of the insane person and not what may happen following a recommendation of mercy. The situations are, however, similar.

This court affirmed the trial court, which refused to answer the questions posed by the jury. The reasoning was that a complete explanation of all of the ramifications of R. C. 2945.39, which might involve also R. C. 2945.37 and 2945.38, "could very well work to the prejudice of the defendant and invite reversal." To completely explain in the instant case might well suggest to a jury that a defendant found to be not guilty by reason of insanity might be on the street in a relatively short time, which has happened in Ohio recently, and might work to the prejudice of the defendant rather than to his advantage. In *Barnes,* this court held: "The trial court wisely, and properly, refused

to instruct the jury as to possible disposition of the defendant, Barnes, in response to the questions of the jury."

As counsel argues, this court did say in its decision in *State* v. *Rivers,* No. 9990, issued July 13, 1971, that the treatment of one found to be insane is in no sense punishment. Such proposition, however, does not stand alone and isolated. The court also said the following, at page 6: "* * * inquiry into the sanity of an accused, as is permitted and required by statute, has nothing whatever to do with the guilt or innocence of the person examined. If found to be insane the finding does not destroy guilt. If Joe Rivers killed his in-laws he is guilty of the crime be he sane or insane." And, the court concluded, that if he were found insane, he simply would not be held "accountable for his crime" and treatment would ensue. Treatment could result in a restoration to society or, if the insanity continued, confinement for life could follow. All of this the jury is entitled to know. Such an instruction would likely be called prejudicial by defense counsel if given and no recommendation of mercy followed.

The court holds, as it did in *Barnes,* that the trial court wisely, and properly, refused the special instruction requested. To have given it, and supplied such ramifications as were necessary to a full explanation, would have been prejudicial to this defendant.

The fourth and final error assigned is that the judgment from which the appeal is taken is against the manifest weight of the evidence on the issue of insanity. The issue is as to the mental condition of Boham on September 2, 1966, the day on which the crime was committed. Defendant urges that the sole evidence at trial on the issue of insanity, at the time of the crime, was provided by Dr. Vermeulen. This appears to be correct. Such a suggestion from defense counsel implies that since his testimony stands alone, the jury was required to conclude that the defendant was not guilty by reason of insanity. That position, if it really be the position of defendant, overlooks the fundamental point that a jury is not required to believe any witness, expert or otherwise.

Dr. Vermeulen was asked if he had an opinion as to the state of mind of the defendant on September 2, 1966, and he said that he had, and expressed it as follows:

"I do believe that he was mentally ill at the time."

He further said: "* * * [my examination of the defendant] leads me to believe he is suffering from an illness called schizophrenia."

When pressed, a bit later, for an opinion as to the ability of Boham to distinguish between right and wrong at the time of the incident, the doctor answered as follows:

"I would have to know more of the circumstances under which the crime was committed. It is very difficult to go back four years and to reconstruct the circumstances.

"I would say that he was mentally ill at that time; that this schizophrenic condition of him would make him very susceptible to feelings such as jealousy, feelings that he would be slighted by a woman, and similar feelings. If these has [sic] been present, then I would believe that he would know that it would be wrong to kill but that he might not be able to refrain himself."

It is the function of a jury not a reviewing court to weigh evidence. A Court of Appeals will not disturb the finding of a trial jury on matters of evidence unless it clearly appears that the jury completely lost its way or was the victim of bias or prejudice. In this case, the jury was entitled to believe or disbelieve the expert, or to give such weight to his testimony as in their collective judgment it was entitled to receive. (3 Ohio Jurisprudence 2d 820, Appellate Review, Section 821.)

It cannot be said in this case that the jury lost its way. The evidence is sufficient to support the conclusion reached.

Defendant's assignments of error are not well taken and for the reasons expressed are overruled, and the judgment of the trial court affirmed.

*Judgment affirmed.*

WHITESIDE and REILLY, JJ., concur.