BURTON *v.* RESHETYLO, SUPT.

[Cite as Burton v. Reshetylo (1973),
35 Ohio App. 2d 113.]

(No. 1-73-18—Decided March 30, 1973.)

*Mr. Robert L. Balyeat,* for petitioner.
*Mr. William J. Brown,* Attorney General, and *Mr.
Thomas D. Rooney,* for respondent.

GUERNSEY, P. J. This is an action in habeas corpus
brought on behalf of an inmate of the Lima State Hospital
committed thereto on or about September 5, 1962, by the

criminal division, Court of Common Pleas of Hamilton County, after having been bound over for grand jury action by an examining magistrate on a charge of issuing checks without sufficient funds. He has been confined to the Lima State Hospital for more than 10 years, has not been restored to reason, and his mental condition is presently such that he is not sane and his release would result in his being dangerous to himself or to society.

The sole dispositive issue raised is whether the criminal division of a court of common pleas has jurisdiction to commit a person to the Lima State Hospital pursuant to the supposed authority of R. C. 2945.37 and 2945.38 when that person has merely been bound over to the common pleas court by a court of preliminary hearing and has not been indicted by a grand jury.

Prior to the revision and codification of criminal procedure in 1929, G. C. 13577 prescribed, among other things:

"If a grand jury upon investigation of the person accused of crime finds such person to be insane it shall report such finding to the Common Pleas Court. Such court shall order a jury to be impanelled to try whether or not the accused is sane at the time of such impanelling, and such court and jury shall proceed in a like manner as provided by law when the question of the sanity of a person indicted for an offense is raised at any time before sentence. If such person is then found to be insane, he shall be committed to the Lima State Hospital until restored to reason. * * * "

At the same time G. C. 13608 (112 Ohio Laws 168) provided, among other things:

"That whenever upon arraignment or the calling for trial of a defendant indicted for a criminal offense, immunity from pleading to the indictment is claimed on behalf of the defendant on the ground that he is at the time insane, such claim of immunity shall be made in writing * * * ; and whenever upon such arraignment or calling for trial of a defendant so indicted, the defendant shall plead not guilty, if the existence of insanity in the defendant at the time of the commission of the alleged offense is to be

claimed as a defense, the defendant, by counsel, shall in writing * * * notify the judge of his intention to make such defense * * * ; and whenever after a verdict of guilty the attorney for the defendant notifies the trial court in writing * * * that the defendant is not then sane * * * the following proceedings shall be had: A jury shall be immediately impaneled as in other cases, and the trial as to the defendant's mental condition at the time in question shall be had and three-fourths of said jury can return a verdict. * * * ''

Similarly, G. C. 13614 (98 Ohio Laws 239, 241) prescribes:

''If a person under indictment appears to be insane, proceedings shall be had as provided for persons not indicted because of insanity. If such person is found to be insane he shall be committed to the Lima State Hospital until restored to reason when the superintendent thereof shall notify the prosecuting attorney of the proper county who shall proceed; as provided by law, with the trial of such person under indictment.''

At the time that G. C. 13577, 13608 and 13614, as quoted, were effective, G. C. 1985 prescribed, as pertinent here (98 Ohio Laws 236):

''The Lima state hospital shall be used for the custody, care and special treatment of insane persons of the following classes:

''* * * *

''3. Persons accused of crime, but not indicted because of insanity.

''4. Persons indicted, but found to be insane.

''* * * *''

As part of the revision and codification of criminal procedure adopted April 1, 1929 (113 Ohio Laws 123 *et seq.*), G. C. 13577, 13608, 13609, 13610 and 13614, were repealed and, in their stead, G. C. 13441-1 and 13441-2, were enacted, prescribing in pertinent parts:

G. C. 13441-1. ''If the attorney for a person accused of crime pending in the court of common pleas, whether before or after trial suggests to the court that such person

is not then sane * * * or if the grand jury represents to the court that any such person is not then sane, or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. * * * "

G. C. 13441-2. "If the court or jury find upon the hearing * * * that the accused is sane, he shall be proceeded against as provided by law. If the court or jury find him to be not sane, he shall be forthwith committed by the court to an insane hospital within the jurisdiction of the court; provided, that if the court deem it advisable it shall commit such person to the Lima State Hospital until he be restored to reason, and upon being restored to reason the accused shall be proceeded against as provided by law."

These two sections now exist in substantially identical form as R. C. 2945.37 and 2945.38 except for minor changes in phrasing incident to the adoption of the Revised Code.

Meanwhile, effective January 1, 1938 (117 Ohio Laws 571), G. C. 1985 was repealed and G. C. 1890-69 enacted in its stead, providing:

"The Lima state hospital shall be used for the custody, care and special treatment of insane persons of the following classes:
" * * *

"2. Persons adjudged insane by a probate court under the provisions of section 72 [G. C. 1890-72] of this act.
" * * *

"4. Persons charged with a felony whose cases are pending in the court of common pleas, either before, during or after trial but before sentence, and found to be insane.
" * * * "

At the same time G. C. 18901-72 was enacted prescribing:

"When in an inquest of insanity a judge of the probate court finds to be insane and vicious and dangerous

a person theretofore convicted of a felony, *or when in an inquest of insanity the proof is evident and the presumption great that a person has committed an act or acts that constitute a felony in Ohio although not formally charged with crime, and such person is determined by the probate judge to be insane and vicious and dangerous*, the court may direct the commitment of such person to the Lima state hospital where he shall be detained until he is recovered or his condition has improved to such an extent that his discharge will not be detrimental to the public welfare or injurious to him." (Emphasis added.)

The emphasized provision of G. C. 1890-72 was not preceded in the law by any similar specific authority given to the probate court. Effective in 1941 (119 Ohio Laws 633), the emphasized portion of G. C. 1890-72 was deleted by amendment and not by that act reenacted.

Effective in 1945 (121 Ohio Laws 436), the preamble to G. C. 1890-69 was amended to read:

"The department of public welfare shall provide and designate a state hospital for the custody, care, and special treatment of persons of the following respective classes: * * *."

Effective November 7, 1953 (125 Ohio Laws 871), the designation "department of public welfare" was amended to read "department of mental hygiene and correction." In its present form R. C. 5125.01, the successor to G. C. 1890-69, reads unchanged and in pertinent parts:

"The department of mental hygiene and correction shall provide and designate a state hospital for the custody, care, and special treatment of persons of the following classes:

" * * * ;

"(D) Persons charged with a felony, whose cases are pending in the court of common pleas, either before, during, or after trial but before sentence, and found to be insane;

" * * *."

Lima State Hospital has been so designated.

We gather then from these statutes that though prior

to 1929 a separate and specific provision existed under G. C. 13577 for the report by the grand jury of a person not indicted and for the trial by the common pleas court of the issue of his sanity, and his commitment to Lima State Hospital if found insane, such separate and specific provision disappeared from the law as a result of the revision and codification of criminal procedure enacted April 1, 1929. It also appears that though prior to 1938 the General Assembly had designated that the Lima State Hospital be used for the custody of any person accused of crime but not indicted because of insanity this provision disappeared from the law effective January 1, 1938, when the probate court was the only court given jurisdiction under defined circumstances to commit such person to the Lima State Hospital.

What then is there in the case law of Ohio on the issue before us? We find no case of authority wherein the provisions of R. C. 2945.37 and 2945.38 have been applied to a person not indicted for a felony.

However, in *Evans* v. *State* (1930), 123 Ohio St. 132, involving an indicted defendant, Judge Allen observes, page 135:

" * * * Analyzing the section [G. C. 13441-1], we find, first, that the attorney for a person accused of crime 'pending in the court of common pleas' may suggest to the court that such person is not then sane. The phrase 'pending in the court of common pleas' certainly contemplates that the representation of insanity may be made at the time that the trial is pending in the court of common pleas. *It indicates that the Legislature desired to take care of the situation where a defendant is actually insane at the time of the trial.* The words relied upon for the argument that the court may disregard a representation of insanity made during the trial, are not 'either before or after trial,' but 'whether before or after trial.' The use of the word 'whether' emphasizes *the intention of the Legislature to safeguard, rather than to curtail, the rights of an insane defendant.* These words mean that, regardless of the time of suggestion, with reference to whether it is before or after

the trial, an attorney may, by presenting the certificate of a reputable physician, compel an examination into the mental condition of the defendant. Also the fact that the phrase 'before or after the trial' qualifies the initial phrase only is shown by the fact that a second provision is enacted, namely, that the grand jury may represent to the court that any such accused is not then sane. Any such representation by the grand jury would of course come before, and not after, the trial. Then follows the significant phrase, 'or if it otherwise comes to the notice of the court that such person is not then sane.' No limitation of time whatever is attached to this phrase, and in the opinion of the majority of the court no such limitation is intended, *except that the case be 'pending in the court of common pleas.'* * * *" (Emphasis added.)

In January 1938, this court held in *State, ex rel. Waits,* v. *Bushong, Supt.,* 59 Ohio App. 319, involving an indicted defendant, but pertaining to a commitment occurring in 1926, that the Common Pleas Court had exclusive jurisdiction to make inquiry of and to commit an indicted person on a suggestion of his insanity, and that such a person committed to the Lima State Hospital by a probate court was in illegal custody. In so holding the court relied on its own interpretation of the statutes as well as on the statement in the opinion in *State, ex rel. Davey, Governor,* v. *Owen, Judge,* 133 Ohio St. 96 that, "While the content of some statutes has been changed, it is still the law of this state that the mental capacity of one under indictment must be determined under the provisions of Section 13441-1, General Code, and not by the probate judge."

More basic to the issue herein, however, is the case of *State, ex rel. Townsend,* v. *Bushong, Supt.,* 146 Ohio St. 271, wherein the Supreme Court affirmed a judgment of this court in a habeas corpus action releasing the petitioner, who had been committed under the provisions of G. C. 13441-1 and 13441-2, from the custody of the Superintendent, Lima State Hospital, and returning him for trial because "now sane." This court held that the only issue presented at a preliminary trial of present insanity as provid-

ed by G. C. 13441-1 and 13441-2 is whether the accused has sufficient soundness of mind to appreciate the charges against him and the proceedings thereon, and to enable him to make a proper defense, and that the clause of G. C. 13441-2 requiring the accused to be held "until he be restored to reason" means "until the accused has been restored to sufficient soundness of mind to appreciate the charges against him and the proceedings thereon, and to enable him to make a proper defense." In affirming this judgment, the Supreme Court held in its *per curiam* decision:

"The petitioner was committed to the Lima State Hospital pursuant to and in compliance with Sections 13441-1 and 13441-2. The only question for determination under these provisions is whether the relator is of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and whether he is mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense."

A person bound over to the common pleas court for grand jury action by a court of preliminary hearing may never be indicted. If in jail for an indictable offense and not indicted at the term of the court at which he is held to answer, he shall be discharged unless certain conditions exist. R. C. 2939.24. It is not reasonably consistent with this legislative fiat that on the suggestion and proof of insanity he might, without indictment, be held indefinitely to answer for a crime for which he may never be indicted. Note also, R. C. 2945.71, -72. If not indicted what is the "nature of the charge against him" and to what must he present "a proper defense"?

It should likewise be noted that R. C. 2945.38 prescribes that "upon being restored to reason the accused *shall be proceeded against as provided by law.*" (Emphasis added.) This obviously contemplates that charges be pending against him for which he may be immediately tried. If there is no indictment there are no proceedings against the accused which may go forward.

Article I, Section 10 of the Bill of Rights of the Ohio Constitution, prescribes among other things, and with exceptions not here applicable, that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." It was held by the Supreme Court in *State, ex rel. Doerflex, Prosecuting Attorney,* v. *Price, Attorney General,* 101 Ohio St. 50, that the grand jury "only acts as the formal and constitutional accuser of crime and those it believes to be probably guilty thereof." In his opinion Judge Wanamaker stated, page 54:

" * * * It is unnecessary to trace the earliest history of the grand jury further than to say that it has existed under the common law for centuries, and, while originally it was a body not only of accusers but of tryers, for centuries at least it has acted only in the former capacity. Its adoption in this country both in federal and state jurisdictions has no doubt been upon the theory that it was one of the most substantial and servicable guarantees against official tyranny, malicious prosecution, and ill-advised and expensive trials, which might generally be avoided if the formal accusation of crime were first made by one's peers, as represented by the grand jury. * * * "

It appears, therefore, that in the common pleas court a person is not formally accused of crime, notwithstanding that he has been bound over by a court of preliminary hearing, unless and until an indictment has been returned by a grand jury.

The respondent cites *State* v. *Morrow,* 90 Ohio St. 202 as authority that a case is pending in the common pleas court when there is filed in that court a transcript of the criminal docket of the examining magistrate by whom the accused has been committed to the jail of the county or recognized to appear before that court to answer the charge in the affidavit filed with such magistrate. The holding of the Supreme Court in that case must, however, be considered in the light of its facts and the statute existing at the time. Its holding must be limited, therefore, to its reference to the pendency of a case in common pleas

court in determining the applicability of a constitutional amendment which becomes effective after the bind over and before indictment. In arriving at its holding the Supreme Court relied on G. C. 13529, which then read in pertinent part:

"When a transcript or recognizance is received by the clerk [of common pleas court], he shall enter the *case* upon the appearance docket of the court with the date of filing of such transcript or recognizance, * * *." (Emphasis added.)

In the codification of the code of criminal procedure adopted by the General Assembly on April 1, 1929, G. C. 13529 was repealed and adopted in its place was G. C. 13-435-13 (113 Ohio Laws 153) prescribing:

"When a transcript or recognizance is received by the clerk of the court of common pleas, he shall enter the same upon the appearance docket of the court, with the date of the filing of such transcript or recognizance, * * * ."

It will be observed that the word *case* which the Supreme Court relied on strongly at page 208 of its *per curiam* opinion in the *Morrow* case was eliminated by this amendment. This amended version now exists as R. C. 29-37.33.

On the other hand, the present provisions of R. C. 2939.22 have existed since before the *Morrow* case was decided and prescribe:

"Indictments found by a grand jury shall be presented by the foreman to the court of common pleas, who shall indorse thereon the date of such filing and enter each *case* upon the appearance docket and the trial docket of the term when the persons indicted have been arrested. * * * " (Emphasis added.)

We must conclude from this evolution of the law, including applicable provisions of the Constitution of Ohio, the statutes and the court decisions, and considering them together, that to give R. C. 2945.37 constitutionality, the legislative intent becomes readily apparent that at least since 1938 the phrase therein, "accused of crime" must be construed as meaning "accused of crime by virtue of the

return of an indictment by a grand jury", and that the phrase "pending in the court of common pleas" must be construed as meaning "pending in the court of common pleas by virtue of an indictment found by a grand jury." It follows from such construction that the suggestion by his attorney that an accused person is not then sane, the representation to the court by a grand jury that an accused person is not then sane, or the action by the court on notice otherwise that the accused is not then sane, may not precede the indictment of such person by the grand jury. By virtue of R. C. 2941.02 similar interpretation must be applied to prosecution by information provided the mental condition of the accused does not preclude his waiver of indictment.

There having been no indictment the criminal division, Common Pleas Court of Hamilton County, lacked jurisdiction to commit the petitioner to the Lima State Hospital and he is entitled to be released therefrom. It appearing, however, that he is not now sane and that his release would result in his being dangerous to himself or to society, the order effecting same will be suspended for a period of not to exceed ten days to permit the respondent superintendent to deliver the petitioner to the custody of the probate division, Common Pleas Court of Hamilton County, or to the probate division, Common Pleas Court of Allen County, to be proceeded against according to law for commitment to an appropriate institution. *State, ex rel. Parsons,* v. *Bushong, Supt.,* 92 Ohio App. 101.

*Judgment accordingly.*

COLE and MILLER, JJ., concur.